909 So.2d 738 (2005)
HIS WAY, INC., Cynthia L. Brunson and Gloria Moore, Appellants
v.
Malcolm McMILLIN, D. Ann Neal and Sam Sumrall, Appellees.
No. 2004-CA-00133-COA.
Court of Appeals of Mississippi.
August 9, 2005.
*740 Todd W. Hood, Oxford, Mark C. Baker, James A. Bobo, Brandon, attorneys for appellants.
C. Victor Welsh, III, Crymes G. Pittman, Danny E. Cupit, Jackson, attorneys for appellees.
Before KING, C.J., GRIFFIS and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Cynthia Brunson, Cole Parkin, and His Way, Inc. filed a complaint for injunctive and other relief in the Chancery Court of Rankin County, Mississippi against Malcolm McMillin, D. Ann Neal, Sam Sumrall, and Ora Reed. The chancery court denied and dismissed the plaintiffs' complaint. Aggrieved, Cynthia Brunson and Gloria Moore, who intervened on post-trial motions, appealed, claiming membership in and control of the charitable corporation with assets of approximately two million dollars. This case turns on whether the chancellor had substantial evidence to support the finding that there were no members of the corporation. If there were no members of the corporation, the board of directors had the authority to elect Malcolm McMillin, D. Ann Neal, Sam Sumrall, and Ora Reed as board members, and under Miss.Code Ann. § 79-11-237(2) (Rev.2001), the board became self-perpetuating. Finding substantial evidence to support the chancellor's findings that there were no members of the corporation and the McMillin board was the true board of directors, we affirm.

FACTS
¶ 2. His Way Homes, Inc. (His Way)[1] was incorporated by Robert Earl Williams, Noel Tyrone Williams and Niccola Ann Williams (the Williamses), in 1986, as a non-profit corporation with its principal place of business in Rankin County, Mississippi. The original bylaws of His Way, dated September 28, 1986, outlined how the corporation was to operate.[2] The corporation's *741 community involvement and activity diminished, and, after January 1, 1989, no activity was recorded for almost two years. Cynthia Brunson testified that the corporation was "dormant" and was "not operating at the present time." However, on December 10, 1991, an annual meeting of directors and members was held, and Steven Hieronymus was elected chairman, president, treasurer, and director; Cynthia Brunson was elected vice president and director, and Gloria Moore was elected secretary and director. Brunson first testified that she was a member of the corporation prior to the meeting and came to the meeting as a member. She subsequently testified, however, that she "was elected as a voting member at the meeting." The minutes do not reflect that any members were ever elected at that or any other meeting.
¶ 3. At a special meeting of directors, held May 1, 1992, the bylaws were amended to create two classes of members: voting members consisting of those who were members as of May 1, 1992, and non-voting members being all members who subsequently joined. Sometime during 1992, the Williamses resigned as voting members of His Way. Their resignation was not documented or discussed in any of the corporate minutes. Also in 1992, the corporation began conducting charity bingo operations in Meridian, Mississippi. Over the next several years, His Way made substantial donations to many charitable organizations including the Institute for Creative Media, Reach Out Services, Inc., Faith Haven, Inc., Art Beats, Inc., French Camp, Southern Christian Services, Alpha House, Heritage School, Make a Wish Foundation, Magnolia Speech School, Epilepsy Foundation, New Stage Educational Touring Company, and Christians in Action.
¶ 4. At the 1994 annual meeting of directors and members, Hieronymus was, once more, elected president, treasurer, and director. Moore was elected director, and Brunson was elected secretary and director. Two months later, Hieronymus unexpectedly resigned, and in response, a special meeting was held on July 18, 1994, at which Brunson was elected president and treasurer, Moore was elected secretary, and Beth Taylor was elected vice-president. Taylor was also elected to fill Hieronymus' term as a director.
¶ 5. At the 1995 annual meeting of His Way, Ora Reed, Grace Lawyer and Clinnon Alexander were elected as directors and officers. Two new positions were created, executive director and controller; a special called meeting of the directors was subsequently held to "set the duties and compensation of the two positions which had been created," at which time Brunson was named executive director and Taylor was named controller. At the 1996 annual meeting, the same officers and directors were elected for another year, and the charity's bingo operation was moved from Meridian to Tupelo, Mississippi. For the first time in the corporate minutes, Brunson was identified as a member; the signature line read "Cynthia L. Brunson, member," and she signed her name thereto.[3]
*742 ¶ 6. The same officers and directors were elected annually until March 31, 2001, when Grace Lawyer resigned as secretary, treasurer and director. At the 2001 annual meeting, Petra Kay was introduced as the new deputy director for His Way; she immediately informed the board of "deplorable conditions of certain areas of the company," including overpaying taxes for the year 2000 by $100,000.
¶ 7. Malcolm McMillin testified that he was approached with regard to becoming an officer of His Way, by Brunson and Scott Levanway, the company's attorney. He testified that Levanway requested that he serve on the board several times, telling him that Brunson was "in the ditch and that she needed some assistance." At a special called meeting, held June 19, 2002, the board of directors elected a new board. "Malcolm McMillin and Sam Sumrall were elected to fill vacancies on the board of directors, there being no voting members of record of His Way Homes, Inc. to fill such vacancies." McMillin was elected president, and Sumrall was elected treasurer. The directors voted to amend the bylaws to require quarterly board meetings, and also voted to create the executive committee, comprised only of the president of the board of directors, to act on behalf of the board between meetings. According to the testimony of both Brunson and McMillin, Brunson was present at the meeting and made no objection to the method by which the directors were elected.
¶ 8. At the first quarterly meeting, held October 22, 2002, the size of the board was increased from three to five, with William Gowan and Ann Neal elected to fill the newly created vacancies. The board also voted to terminate Kay's employment and transferred the duties of the president, which were vested in the executive director, back to the president. The next board meeting was held November 4, 2002, at which the board of directors voted to terminate Brunson as executive director, effective November 8, 2002. Brunson was given four months' pay as severance. On November 12, 2002, the Secretary of State's Office sent His Way, via McMillin, a deficiency letter which listed seventeen "items" which were inadequate and requested written explanations to the questions raised.
¶ 9. On April 14, 2003, in what appears to be an attempt to gain control of the corporation and its two million dollars in assets, Brunson and Moore, acting as the "sole voting members of His Way, Inc.," signed consent minutes which appointed and elected Cole Parkin to hold office as a voting member of His Way, Inc.[4] Immediately thereafter, Brunson, Gloria Moore, and Parkin, acting as the "sole voting members of His Way, Inc.," signed consent minutes which appointed and elected Larry Perry and Bruce Sumrall to serve as members of the board of directors of His Way. In turn, Perry, B. Sumrall and Parkin, as the directors of His Way, immediately signed consent minutes, to be effective April 16, 2003, which removed "any individual serving as an Officer," elected Parkin as chairman of the board and vice president of His Way, Inc., and elected Brunson as president, executive director and secretary. Additionally, the minutes authorized attorneys to pursue "legal proceedings *743 against Malcolm McMillin, D. Ann Neal, Sam Sumrall, Ora Reed, and any other persons or entities. . . ." Also to be effective on April 16, 2003, Perry, B. Sumrall and Parkin, acting as the directors of His Way, signed consent minutes authorizing Brunson to close the existing bank accounts at BancorpSouth and transfer funds to another banking establishment, which was not identified.

PROCEDURAL HISTORY
¶ 10. On April 17, 2003, Brunson, Parkin filed a complaint in the Chancery Court of Rankin County, Mississippi, seeking injunctive, declaratory and other relief against the defendants. The complaint alleged that Brunson and Moore were elected and appointed as full members of His Way, Inc., sometime in 1991, and Hieronymus, Brunson, and Moore were the only three members after the Williamses resigned in 1992. Therefore, they had the right to elect directors and replace McMillin, Neal, and S. Sumrall. On May 12, 2003, McMillin, Neal, and S. Sumrall filed consolidated motions and a response in opposition to the motion for preliminary injunctive relief. Attached to the motion and response was a summary cease and desist order issued by the Office of the Mississippi Secretary of State on April 23, 2003, which ordered Brunson, Parkin, Perry, and B. Sumrall to immediately "CEASE AND DESIST any illegal activity in the State of Mississippi to include using the name of a charitable organization registered with the Secretary of State and/or conducting the solicitation of charitable contributions in and from the State of Mississippi.. . ." On May 13, 2003, the chancery court began taking testimony in connection with the requests for a preliminary injunction and permanent injunction, which were combined by agreement of the parties. Later that day, the hearing was continued and rescheduled until July 15, 2003. Subsequently, Brunson and Parkin filed a motion for partial summary judgment, to which McMillin, Neal, and S. Sumrall responded.
¶ 11. The court issued its ruling and order on September 24, 2003, dismissing and holding for naught the complaint for injunctive, declaratory and other relief. The court found "insufficient evidence to support the allegation that there were any members of His Way after the resignation of the three members of the Williams family during the year, 1992." Accordingly, the court looked to the applicable statutory law, considered the evidence and found McMillin, Neal, and S. Sumrall represent "the only charitable organization registered with the Secretary of State of Mississippi as a nonprofit corporation with authority to solicit contributions under the name `His Way, Inc.'" On October 5, 2003, Brunson filed a motion for reconsideration, new trial, amendment and other relief. On December 12, 2003, Moore filed a motion to intervene; a hearing on the motion was held December 17, 2003. The court denied Moore's motion to intervene for purposes of filing a complaint of intervenor, but allowed her to intervene as a party plaintiff to participate in the proceedings in connection with the requests for post-trial relief and any appeal. The next day, the court heard the plaintiffs' motion for reconsideration and overruled, denied and dismissed the motion.

STANDARD OF REVIEW
¶ 12. Whether or not the chancellor erred in finding that Brunson's proof failed to establish a successful claim for injunctive relief is a question of fact. See Walker v. Murphree, 722 So.2d 1277, 1280 (¶ 15) (Miss.Ct.App.1998). "This Court will not reverse a Chancery Court's factual findings, be they of ultimate fact or of evidentiary fact, where there is substantial *744 evidence in the record supporting these findings of fact." Cooper v. Crabb, 587 So.2d 236, 239 (Miss.1991). The "chancellor's findings will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous or applied an erroneous legal standard." Williams v. Williams, 656 So.2d 325, 330 (Miss.1995); Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994), quoted in Brocato v. Brocato, 731 So.2d 1138, 1140 (Miss.1999).

ISSUES AND ANALYSIS

I. DID THE CHANCELLOR COMMIT REVERSIBLE ERROR AS A MATTER OF LAW BY FINDING HIS WAY, INC., HAD NO MEMBERS?
¶ 13. Brunson's main contention, in her brief as well as in oral argument, is that the chancellor erroneously held that His Way had no members after 1992 because "logically" the organization had to have members in order to conduct charitable gaming in the State of Mississippi pursuant to Mississippi Code Ann. § 97-33-55 (1972).[5] Brunson posits that since Mississippi law requires that all nonprofit entities which lawfully conduct bingo games must have members, the "inescapable conclusion" is that His Way must have had members. We cannot accept this conclusion. Although His Way was required to have members by law, the argument that "the most basic form of Aristolean logic" dictates that the law was followed is anything but logical. The corporation may very well have been operating in violation of the law for a decade, and just managed to escape the notice of regulatory authorities. This contention is without logic or merit.

II. DID THE CHANCELLOR APPLY AN ERRONEOUS LEGAL STANDARD IN FINDING BRUNSON WAS NOT A VOTING MEMBER OF HIS WAY, INC.?
¶ 14. Brunson argues that the chancellor applied an erroneous legal standard in finding that she was not a member of His Way. In determining whether or not to grant injunctive relief, the proper legal standard requires the trial court to issue an injunction if the plaintiff proves by a preponderance of the evidence that:
(1) the plaintiff will be irreparably harmed if the injunction does not issue; (2) the plaintiff's harm outweighs the defendant's harm if the injunction does issue; (3) the public interest, i.e. the rights of third persons will be served by the injunction; and (4) the plaintiff is likely to prevail on the merits.
Punzo v. Jackson County, 861 So.2d 340, 350 (¶ 41) (Miss.2003) (citing Electronic Data Sys. Corp. v. Mississippi Div. of Medicaid, 853 So.2d 1192, 1207-08 (¶ 49) (Miss.2003); State v. Myers, 244 Miss. 778, 146 So.2d 334 (1962)); see also Adams County Election Comm'n, ex rel. v. Sanders, 586 So.2d 829, 831-32 (Miss.1991). It is clear from a reading of the ruling and order of the court that the chancellor did, indeed, apply these factors to the case at hand, and found that Brunson had not met the first requirement in her burden of proof. In the ruling, the chancellor noted that "[m]uch testimony and other evidence was submitted at hearing relevant to Plaintiffs' (Brunson's and Parkin's), and Defendants' (McMillin's, Neal's and Sumrall's) respective claims that each were the *745 lawful representative of His Way, Inc., a nonprofit corporation registered in the State of Mississippi, to the exclusion of parties opposite." The chancellor stated that he heard and considered all of the evidence presented, "much of which is controverted," and found there was insufficient evidence "to support the allegation that there were any members, voting and/or non-voting, of His Way at the time of the hearing before the Court." Having found there was not sufficient evidence to support Brunson's contention that she was "made" a member of His Way, Inc., the court found the plaintiffs were not authorized to represent His Way, and "lacked standing to suffer immediate, irreparable and substantial harm and injury as His Way, Inc., or as individuals acting as members, officers, directors and/or employees of His Way, Inc." The chancellor also stated that "[t]heir proof has further failed to establish any other immediate, irreparable and substantial harm and injury entitling them to any other relief prayed for."
¶ 15. Brunson argues that, in the absence of corporate minutes, the chancellor should have considered the unrefuted affidavit testimony of Tom Furby,[6] former counsel to His Way, Inc., along with the affidavits of Niccola Ann Williams Benz, Moore, and Hieronymus, which she claims evidences that she was made a voting member of His Way in 1991.[7] This argument fails for several reasons. First, we are not presented with a situation where there is an absence of corporate minutes; on the contrary, over a hundred pages of corporate minutes were introduced into evidence. Under Mississippi case law,
A corporation speaks and acts through its records and minutes. See 18 C.J.S. Corporations § 191, § 554; 19 C.J.S. Corporations § 751. A formal corporate resolution is not the only evidence of corporate action, however, corporate records and minutes constitute the best evidence of corporate action. 32A C.J.S. Evidence, § 810. If corporate records and minutes of the action are available, parol evidence is not admissible to prove the corporation action, personal knowledge of corporate action is always admissible. 32A C.J.S. Evidence, § 810.
American Tel. & Tel. Co. v. Purcell Co., 606 So.2d 93, 97 (Miss.1990) (emphasis added). In the instant case, the chancellor was justified in finding the corporate records and minutes of His Way, consisting of over 100 pages, "constitute the best evidence of who were the members. . . ." As the McMillin Board points out, these minutes do "refute" the affidavits as the minutes *746 do not reflect the election of any members.
¶ 16. Second, Brunson has presented no case law or other authority that requires the chancellor to accept as true the testimony of individuals regarding facts outside the corporate minutes. Brunson contends that the supreme court "has long recognized that the presence or absence of corporate minutes does not preclude a[c]ourt from determining the facts of corporate actions and applying the law to those facts." Longanecker v. Diamondhead Country Club, 760 So.2d 764, 773 (¶ 22) (Miss.2000). While the chancellor is not precluded from considering personal knowledge of the corporate actions, there is no precedence or statutory law that requires the chancellor to give the personal testimony more weight than the corporate minutes. The chancellor is charged with observing the demeanor of witnesses and determining the appropriate weight and credibility of their evidence. See Richard v. Richard, 711 So.2d 884, 888 (Miss.1998).
¶ 17. Regarding Brunson's membership, the affidavit of Niccola Ann Williams Benz only stated that "Cynthia Brunson was made a full member of His Way Homes, Inc., in 1991." When specifically asked about how she became a member, Brunson's live testimony was vague and conflicting. Brunson first testified that when she came to the meeting in 1991, she was a member. When asked if she was present at any meeting where she was elected as a member, she replied, "That meeting was what I understood that to be.... In my memory and understanding of what happened, I was elected a voting member at the meeting." When questioned about previously stating that she came to the meeting, on December 10, 1991, as a member, Brunson responded, "That's what I understood at the time. I didn't understand how this all was put together...." When asked if she was present at any meeting before December 10, 1991, in which she was elected or appointed a member, Brunson replied, "No, not to my knowledge." After considering Brunson's vague and conflicting testimony, the chancellor was warranted in finding there was "no evidence whatsoever that Cynthia L. Brunson ... was ever elected [a member] of His Way."
¶ 18. The chancellor also found "insufficient evidence to support the allegation that there were any members of His Way after the resignation of the three members of the Williams family...." (emphasis added). Looking to the only other possible evidence regarding membership, outside the corporate minutes, Moore's affidavit, as well as Hieronymus's affidavit, both read: "In 1991, I was elected and appointed a full member of His Way Homes, Inc.,.... Immediately after my appointment, the full members were Robert Earl Williams, Niccola Ann Williams, Noel Tyrone Williams, Stephen Hieronymus, Cynthia L. Brunson, and Gloria Gene Moore." The affidavits provided no details as to when or how they were purportedly made members or that the corporate requirements were followed. No other evidence corroborated any election or appointment of any members at any time.[8]
¶ 19. We find that the chancellor was acting within his discretion in ruling the best evidence to be the corporate minutes, *747 and in finding that there was no evidence in the corporate minutes to support the contention that Brunson or anyone else was a member of His Way. Given the rule that corporate records constitute the best evidence of corporate acts, we are unable to determine that the findings of fact and the decision of the chancellor on the issues presented were manifestly wrong. While this Court may or may not have given greater weight to evidence other than the corporate minutes, our responsibility is to determine whether there is credible evidence to support the chancellor's decision. If there is, we must affirm. Bower v. Bower, 758 So.2d 405, 412 (¶ 33) (Miss. 2000). The chancellor acted within his discretion in finding the corporate minutes, to be the best evidence; the minutes do not reflect that any members were ever elected to the corporation.
¶ 20. Lastly, the affidavits were filed in support of Brunson's motion for summary judgment. The McMillin Board expressly objected to their being used as evidence at the injunction hearing as the affiants were not subject to cross examination. The opinion of the chancellor does not reflect what weight, if any, he afforded the affidavits. On the motion for reconsideration, Brunson and Moore urged the court to re-open the evidence and to allow them to present live testimony in place of the affidavits. The chancellor refused, stating:
This Court has got to base its decision on the evidence before it. Not what comes in later. Not what may have come in. Not based on Summary Judgment Motion that was not before the Court, but on the Injunction. That's what was before this Court. That's the only thing that was before this Court. And I had to deal with the evidence and come to a decision that I felt was right, and I have done that in this case.
At the hearing, counsel for Moore acknowledged that the court's discretion regarding the re-opening of evidence "is beyond broad. It is complete." We cannot find that the chancellor abused that discretion in the instant case.
¶ 21. The chancellor's reliance on the corporate minutes and his finding that there were no members of His Way were not manifestly wrong.

III. DID THE CHANCELLOR COMMIT REVERSIBLE ERROR BY REFUSING TO REOPEN THE CASE TO ALLOW GLORIA MOORE THE OPPORTUNITY TO INTRODUCE EVIDENCE?
¶ 22. Following entry of the chancellor's September 24, 2003, order dismissing the complaint for injunctive relief, Moore file a motion to intervene requesting "an opportunity to present evidence and be fully heard prior to any adjudication which impacts her rights." After hearing argument of counsel, the chancellor overruled Moore's motion to intervene "for purposes for retrying the merits in this case" but allowed the intervention for the purpose of post-trial motions.
¶ 23. "[A] trial court has considerable discretion in ruling on a motion to intervene." City of Tupelo v. Martin, 747 So.2d 822, 826 (¶ 9) (Miss.1999) (citing Cummings v. Benderman, 681 So.2d 97, 101 (Miss.1996); Guaranty Nat'l Ins. Co. v. Pittman, 501 So.2d 377, 381 n. 1 (Miss. 1987)). The standard of review of a chancellor's denial of a motion to intervene is abuse of discretion. Cohen v. Cohen, 748 So.2d 91, 93 (Miss.1999) (citing Perry County v. Ferguson, 618 So.2d 1270, 1271-72 (Miss.1993)). Considering our standard of review, we cannot find the chancellor abused his discretion in denying the motion to intervene. Moore signed consent minutes, dated April 14, 2003, in which she and Brunson attempted to elect Cole Parkin as a voting member of His Way, Inc. Moore also signed an affidavit in regard to *748 this litigation on April 14, 2003, just four days before Brunson and Parkin filed their complaint in this case. However, it was not until December 15, 2003, that Moore filed her motion to intervene, in which her attorney argued that she "was under the impression that this case was only in the preliminary stages and did not understand that this action could potentially divest her of her rights as a member of His Way, Inc." Moore was correct in her assertion that the Mississippi Supreme Court has set forth a four-prong analysis to determine whether a chancellor should reopen a case. See Wakefield v. Puckett, 584 So.2d 1266, 1268-69 (Miss. 1991). The first prong of the test is "[w]hether the cause of the omission is excusable (e.g., omission due to inadvertence, mistake, etc.?)...." Id. In analyzing the application of the first prong, Moore had or should have had knowledge that the litigation was in full force, and has offered no reason or justification as to excuse her substantial delay. Moore has failed to meet the first prong of the test and, therefore, the chancellor did not abuse his discretion in denying Moore's motion to intervene.

IV. DID THE CHANCELLOR APPLY AN ERRONEOUS LEGAL STANDARD IN ALLOWING HIS WAY, INC., TO STRIP MEMBERS OF VOTING RIGHTS GUARANTEED BY THE CHARTER?
¶ 24. Moore argues that the chancellor's decision violates the corporation's charter of incorporation and is inconsistent with precedent and statutory law. However, this issue was never raised to the trial court. When the charter was first introduced into evidence on motion for reconsideration, counsel for Moore noted that the 1992 amendment to the bylaws creating voting and non-voting members was in conflict with the charter which provided that each member would have voting rights; he merely submitted, however, that "the Court should evaluate that with whether and to what extent that amendment rendered void or voidable conduct subsequent thereto." Moore made no argument that the chancellor's decision violated the charter of the corporation. "As this Court has stated, time and again, an issue not raised before the lower court is deemed waived and is procedurally barred." Gale v. Thomas, 759 So.2d 1150, 1159 (¶ 40) (Miss.1999); see, e.g., Davis v. State, 684 So.2d 643, 658 (Miss.1996); Cole v. State, 525 So.2d 365, 369 (Miss.1987).
¶ 25. Further, we do not see merit in Moore's argument. Neither the amended by-laws nor the chancellor's opinion "strip" any member of their voting rights. Moore claims to have become a member with Brunson prior to the amendment to the by-laws; had the chancellor accepted this contention, she and Brunson would have had voting rights under either the original or amended by-laws. Relying on the corporation's minutes, the best evidence of the corporate acts, the chancellor determined there to be "insufficient evidence to support the allegation that there were any members of His Way after the resignation of the three members of the Williams family during the year, 1992." We reject the contention that the court improperly "stripped" members of their voting rights granted by the corporation's charter.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] Although the corporation's name was changed, in 2002, from His Way Homes, Inc., to His Way, Inc., the name change has no effect on our analysis, and the corporation will be referred to throughout as "His Way."
[2] The original bylaws state that the board of directors "shall be elected annually by the members at their annual meeting." The original bylaws also defined the persons who constituted members of the corporation, and how the members were to be elected:

Section 1. MEMBERS. The members of this Corporation shall consist of those persons who joined as incorporators in obtaining this Charter of Incorporation plus the original officers and Board of Directors of the Corporation and such other persons as may from time to time be elected and admitted to membership by the other members of the Corporation. The corporation shall have only one class of members. . . .
Section 2. ACQUIRING MEMBERSHIP. Any such person may become a member of the Corporation by written application to the Corporation in the manner and form prescribed by the members. The members shall have the right to refuse any applications for any reason which to them shall seem sufficient, provided that such refusal be by a majority vote of the members present at any meeting of the members at which there shall be a quorum present. Resignation from membership shall be presented in writing to the Corporation.
Section 3. NUMBER. There shall at no time be fewer than three (3) members and in the event the number falls below three (3), the resignation or termination of a member shall not be effective until thirty (30) days after actual written receipt at the Corporation's principal office. In the event of resignation or termination of a member, a meeting of the remaining members shall be called to select an additional member or members. Should the remaining members not be able to select additional member or members, the Board of Directors of the corporation shall select additional members.
[3] Subsequently, Cynthia Brunson was referred to as a member in the corporate minutes sixteen times.
[4] In accordance with the 1992 amendment to the bylaws, Brunson and Moore were without the authority to elect Parkin as a voting member. Additionally, the chancellor found Parkin had "very little knowledge of the assets of the subject corporation, no familiarity with the regulations of the Secretary of State's Office regarding charitable contributions, no knowledge of the term of the lease agreement concerning the alleged corporate office, and that he has never been to such corporate office in Rankin County."
[5] Mississippi's Charitable Bingo Law permits a nonprofit entity to conduct bingo games if "the game is held by active members."
[6] Tom Furby's affidavit states: "the only members of His Way Homes, Inc., were Steven Heironymus, Cynthia L. Brunson, and Gloria Gene Moore." However, the affidavit also provides that Furby did not begin performing legal work for His Way until 1992. Thus, Furby was without personal knowledge as to whether, or how, Brunson, Moore, Hieronymus became members in 1991.
[7] Brunson and Moore also argue that the minutes from the 1991 annual meeting show that they were both directors and members at the time of the meeting and therefore voted for the directors. Had they not been members, they argue that they could not have voted for the directors. However, a reading of the 1991 corporate minutes does not differentiate which signatories were directors and which signatories were members. The minutes could just as easily be interpreted that the members, the Williamses, elected the board of directors and officers, including Brunson, Moore and Hieronymus, and that after they were so elected, Brunson, Moore and Hieronymus then voted, as new directors, to ratify the acts of the directors for the previous year, and that they signed not as members but as new directors of the corporation. There is no indication in the minutes that the three had any association with the corporation prior to the 1991 annual meeting or that they voted for the directors.
[8] We note that the bylaws of the corporation require persons seeking membership to make "written application" to the corporation and that members be "elected and admitted to membership by the other members of the Corporation." There is no evidence that Brunson, or anyone else, ever made a written application for membership or was ever elected and admitted to membership in compliance with the bylaws.