# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01153-COA

**BUENA VISTA LAKES MAINTENANCE ASSOCIATION, INC.**                    **APPELLANT**

**v.**

**KYLE R. JONES**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/2022 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DEREK EVAN WHITLOCK |
| ATTORNEY FOR APPELLEE: | M. W. ZUMMACH |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 01/23/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE, AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     The Buena Vista Lakes Maintenance Association Inc. (Buena Vista) is a non-profit organization in DeSoto County, Mississippi, that is governed by its homeowner's association (HOA). The HOA is governed by its bylaws, which provide that the bylaws may be amended by a two-thirds majority vote. On October 4, 2021, the HOA held its annual meeting where it was to vote on an amendment to the bylaws. The effect of this proposed amendment, Article XX, was to ban property owners from leasing their property for any duration. On the day of the meeting, there were 399 eligible votes, but only 206 of those votes were represented at the meeting, either in-person or by proxy. After determining that a quorum was present, the board proceeded with the meeting and discussed Article XX. During this

discussion, plaintiff Kyle Jones, a property owner and member of the HOA, voiced his opposition to the board's interpretation of the bylaws and argued that a vote to amend the bylaws required a two-thirds majority of *all eligible votes* and not a two-thirds majority of those votes cast at the meeting. The board disagreed and maintained that a two-thirds majority, as provided in the bylaws, was two-thirds of the *eligible votes cast*. Out of 206 total votes cast, 138 votes were cast in favor of Article XX, and 68 were cast against it. The board declared that 138 was exactly two-thirds of 206, and Article XX was adopted as Amendment XX.

¶2.     Shortly thereafter, Jones filed a complaint in DeSoto County Chancery Court requesting a declaratory judgment that the voting procedure the board used was invalid. Jones argued that Amendment XX required a two-thirds vote of *all votes eligible to be cast*, not merely a two-thirds vote of those *cast at the meeting*. After a trial, the chancellor found the vote was invalid because the bylaws were ambiguous and determined that the intent of the drafters of the bylaws was to require a two-thirds majority of *all votes eligible to be cast*, not just those *cast at the meeting*. She further found that Amendment XX was invalid for public policy reasons. Buena Vista appeals arguing that the chancellor erred in finding the bylaws ambiguous and in finding Amendment XX violated public policy. We conclude the bylaws are not ambiguous, and their plain language comports with Buena Vista's interpretation. Accordingly, we reverse the chancellor's order and remand the case.

**FACTS AND PROCEDURAL BACKGROUND**

2

¶3.      Buena Vista is a residential subdivision with an active HOA and bylaws,[1] which were enacted upon the HOA's incorporation in 1968.  Amendments to the bylaws are addressed in Article V, Section 3 of the bylaws, which provide the following:

> At all meetings of the members, 25% of the votes eligible to be cast shall constitute a quorum, and a **majority of the members present** shall decide any questions at all meetings **except** on the question of:
>
> 1.      Change of lot Assessments, which requires a favorable vote of a majority of the votes eligible to be cast by the members of the Association,
> 2.      Expulsion of members for any reason, and
> 3.      **Amending By-Laws, requires a two-thirds (2/3) vote**.

(Emphasis added).  Amendments are further discussed in Article XV of the bylaws, which provides:

> By-Laws may be amended by a **two-thirds (2/3) vote**, a quorum being present, at any annual or special meeting called for that purpose.

(Emphasis added).  The front page of the bylaws notes the following for guidance:

> NOTE:  "**Two-thirds (2/3) vote**" - as per <u>Robert's Rules of Order</u> and as required by the U.S. Constitution and used by Congress.

(Emphasis added).  Robert's Rules of Order ("Robert's Rules) provides the following clarification:

> Two-thirds Vote. **A two-thirds vote means two-thirds of the votes cast,** ignoring blanks which should never be counted. **This must not be confused with a vote of two-thirds of the members present, or two-thirds of the members,** terms sometimes used in by-laws. To illustrate the difference: Suppose 14 members vote on a question in a meeting of a society where 20 are present out of a total membership of 70, a two-thirds vote would be 10; a two-thirds vote of the members present would be 14; and a vote of two-thirds of the

---

[1]  The bylaws are also referenced as "The Orange Book" in the record, but for our purposes, we will refer to them simply as "the bylaws."

members would be 47.

(Emphasis added).  The footnotes contained in the bylaws illustrate past examples of bylaw amendments and how previous boards have interpreted this "2/3 vote" requirement.  For example, page 3 of the bylaws indicates that a deletion of a provision regarding corporate ownership was approved by "**2/3 of votes cast** (206 of 303 votes)." (Emphasis added).  Another amendment, which changed the day for the annual meeting from Friday to Monday, was approved by "**2/3 of votes cast** (265 of 312 votes)." (Emphasis added).  Page 4 of the bylaws indicates that an amendment as to who is eligible to serve on the board of directors was approved by "**2/3 of votes cast** (280 of 295 votes)." (Emphasis added).   Page 5 shows an entire provision regarding corporate membership was deleted  by "**2/3 of votes cast** (273 of 295 votes)." (Emphasis added).  Page 10 contains an amendment that deleted a portion of the provision pertaining to a waiver of dues for lots A, B, and C, which was approved by "**2/3 of votes cast** (276 of 295 votes)." (Emphasis added).

¶4.     On August 31, 2021, the HOA  mailed notices of its annual meeting to take place on October 4, 2021. Each notice indicated that the meeting agenda included a vote on three individual items.  One of those items was the proposed amendment to the bylaws at issue, Amendment XX, or the "Property Value Protection Bylaw," which would ban new rentals in the Buena Vista subdivision.  The notice provided that per the bylaws, 25% of all eligible votes would constitute a quorum.  The notice also included the following language:

> A majority of the members present shall decide any questions at all meetings, except (1) Change of lot assessments, which requires a favorable vote of a majority of the votes eligible to be cast by members of the Association (2) expulsion of members for any reason and (3) amending bylaws, which requires

4

a **two-thirds (2/3) vote.**

(Emphasis added).

¶5. On October 4, 2021, the annual meeting took place. On this day, testimony showed there were 399 eligible votes.[2] Of them, 206 votes were represented at the meeting either in-person or by proxy. A quorum was established per the bylaws because 206 votes were well over the requisite 25% of the 399 eligible votes. Before the vote on Amendment XX, the HOA president, Nevill Plunk, led a "robust" discussion during which plaintiff Kyle Jones voiced his opposition to the HOA board's interpretation of the bylaws and argued that a vote to amend the bylaws required two-thirds majority of *all votes eligible to be cast*, not a two-thirds majority of those actually cast at the meeting. The board found otherwise and, in doing so, relied on a legal opinion from its attorney, dated January 20, 2012, stating that a two-thirds majority as provided in the bylaws was understood to be two-thirds of the *eligible votes cast*. One hundred thirty-eight votes were cast in favor of Amendment XX, and 68 votes were cast against it. Finding that 138 was exactly two-thirds of 206 (the number of eligible votes cast) the board declared that Article XX had passed.

¶6. On or about October 18, 2021, Jones filed suit in the DeSoto County Chancery Court. In his complaint, Jones asserted "that there was an illegitimate and void vote of the HOA as a result of a misinterpretation of the Bylaws of the HOA" and that the vote required "two-thirds (2/3) vote of all eligible votes of members of the HOA, and not two-thirds (2/3) of those present and comprising a quorum at a meeting." Jones asked the court to "issue a

---

[2] The bylaws define "eligible votes" as "paid-up" members, or those who had paid their annual dues.

Declaratory Judgment that the proper voting procedure for any matters which may become before the HOA pursuant to the HOA's By-Laws require the affirmative vote of two-thirds (2/3) of all members and owners of the HOA and not only the affirmative vote of two-thirds (2/3) of those members who may be present at a meeting in which a quorum may be present."[3] Jones attached a copy of the bylaws to his complaint. Buena Vista filed a motion to dismiss, which the court denied.[4] On October 7, 2022, Buena Vista filed its answer to Jones's complaint, denying all allegations.

¶7. On October 12, 2022, the trial was held. Jones called his first witness, Nevill Plunk. Plunk testified he was the president of the HOA and that he had been serving in this capacity since 2017. Jones's counsel asked Plunk if he was familiar with Buena Vista's website. He responded, "Somewhat." Jones's counsel handed Plunk a printed page from Buena Vista's website. Plunk indicated he had read the contents of that page in the bylaws. The website printout was then marked as an exhibit and entered into evidence.

¶8. Jones's counsel asked Plunk about the notice that was mailed to homeowners regarding the October 4, 2021 annual meeting. Plunk stated that this notice was mailed to all 447 lot owners to "provide a synopsis of what will take place at the meeting" and to set forth the voting standards for whatever issue was being voted on "per the [bylaws]." Plunk

---

[3] Jones also asked the court for attorney's fees and damages, which the court denied. Jones does not argue this issue on appeal, therefore that issue will not be discussed.

[4] On October 29, 2021, Buena Vista filed a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) but did not appear at the hearing to argue the motion, so the court denied it without prejudice. Buena Vista then moved for summary judgment on July 13, 2022. Jones responded to this motion and also moved for summary judgment. The record is devoid of any orders from the trial court denying these motions.

confirmed that an "eligible voter," as stated in the notice, was a "paid-up member" and that this member was "entitled to one vote for each lot in which they hold the interest required for membership." The notice further provided that "Amending [the] bylaws . . . requires [a] two-thirds vote." The notice was then marked as an exhibit and entered into evidence.

¶9. Plunk testified that the amended[5] meeting minutes indicated that there were "399 eligible members with 206 eligible votes [represented[6]] either by proxy or attendance" and that "a quorum was established." The "Amended Minutes" were then admitted into evidence.

¶10. During cross-examination, Plunk testified that the board "felt it appropriate to try and cease rental properties" in Buena Vista because they "kept seeing more and more rental properties appearing in the community and some from LLCs as far away as California." Plunk further testified that the board uses Robert's Rules in administering its business. Robert's Rules was admitted into evidence.

¶11. Jones's counsel called Willis Willard Johnson III, also known as "Chip." Chip stated he was the mayor of Hernando and an owner of a rental property in Buena Vista. Chip stated that when he found out about Amendment XX, he felt that his retirement was being "taken

---

[5] The original meeting minutes were amended and approved at the following annual meeting in October 2022. Plunk testified the amendment was done to correct a "clerical error" on the original minutes: the language "two-third vote . . . is understood to be two-thirds of the votes eligible to be cast" was changed to "two-thirds of the eligible votes cast."

[6] The meeting minutes contain the phrase "votes present," but we have changed this phrase to "votes represented" to prevent confusion. Notably, some homeowners voted by proxy, and other homeowners had more than one vote, so thinking of these votes as being "represented" eliminates conflating that number with the number of individuals physically present at the meeting.

away" from him. Amendment XX was admitted into evidence.

¶12.    Jones testified last. Jones testified that at the October 2021 meeting at issue, he objected to the board's voting process. He stated that after the vote was complete, "[Plunk] announced there were 138 votes, and the amendment was passed by one vote." Jones testified that there were 206 votes represented at the annual meeting either in person or by proxy. He further testified that there were 399 votes eligible to be cast, and since two-thirds of 399 is 268, based on his understanding of the bylaws, the amendment did not pass. Jones did not dispute that a quorum was present at the meeting.

¶13.    After hearing from all the witnesses[7] and viewing all the evidence, the court found that the bylaws were ambiguous as written and that Amendment XX was against public policy. On October 19, 2022, the DeSoto County Chancery Court ordered the following:

1.    Article 20, which is purported to be an amendment to the Buena Vista Lakes Homeowner's Association's By-Laws, is invalidated, and the vote taken on October 4, 202, is also invalidated as not complying with the spirit of the By-Laws.

2.    Plaintiff has asked for declaratory judgment relief. The Court grants same and declares as follows: on all votes of membership as identified in Article 5, Section 3 of the By-Laws, the Court finds that wherever a reference is made as to the number of votes required or percentage of votes required, same will be calculated based upon the total eligible members, and not the number of votes cast even if a quorum was present.

¶14.    Buena Vista now appeals. Its argument is two-fold. First, Buena Vista argues that its bylaws could only be amended by a two-thirds vote of *eligible votes actually cast* and not a vote requiring two-thirds of *all votes eligible to be cast*, regardless of their being

_____

[7] Buena Vista had prepared to call Kathy Fink, but she was excused because she had been in the courtroom during previous testimony.

represented at the meeting. Second, Buena Vista argues Amendment XX is not invalid for being against public policy.

## STANDARD OF REVIEW

¶15. This Court will not disturb the chancellor's factual findings when they are supported by substantial evidence unless the chancellor abused his discretion, made findings that were clearly erroneous or manifestly wrong, or applied an erroneous legal standard. *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 13-14 (¶17) (Miss. 2007). Appellate courts review questions of law de novo. *Starcher v. Byrne*, 687 So. 2d 737, 739 (Miss. 1997). It is a question of law for the court to determine whether a contract is ambiguous, and if the contract is not ambiguous, courts enforce the contract as written. *Miss. Transp. Comm'n v. Ronald Adams Contractor Inc.*, 753 So. 2d 1077, 1087 (¶32) (Miss. 2000). If found ambiguous, the court's interpretation of the contract is a finding of fact. *Royer Homes of Miss. Inc. v Chandeleur Homes Inc.*, 857 So. 2d 748, 752 (¶8) (Miss. 2003); *see His Way Inc. v. McMillin*, 909 So. 2d 738, 743 (¶12) (Miss. Ct. App. 2005).

## ANALYSIS

**I.     Whether the chancellor erred as a matter of law in finding the Buena Vista bylaws ambiguous.**

¶16. Buena Vista argues that "the language of the bylaws unambiguously indicates that the drafters intended to calculate using a two-thirds vote of a quorum present, *not* a two-thirds vote of the total members" and that the vote, therefore, was valid. The Supreme Court of Mississippi has held that "bylaws operate as a contract between the corporation and its members or between the members inter se[.]" *In re Est. of Ware*, 348 So. 3d 277, 287 (¶22)

(Miss. 2022) (citing 18 C.J.S. *Corporations* § 176). Again, it is a question of law for a reviewing court to determine whether a contract is ambiguous. *Royer Homes*, 857 So. 2d at 751 (¶7) (citing *Ronald Adams Contractor*, 753 So. 2d at 1087). A contract is ambiguous if it is "susceptib[le] to two reasonable interpretations." *Dalton v. Cellular S. Inc.*, 20 So. 3d 1227, 1232 (¶10) (Miss. 2009). "[T]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Cherry v. Anthony*, 501 So. 2d 416, 419 (Miss. 1987). In contract construction, "a reviewing court should seek the legal purpose and intent of the parties from an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. The reviewing court is not at liberty to infer intent contrary to that emanating from the text at issue."[8] *Royer Homes*, 857 So. 2d at 752 (¶9) (citing *Cooper v. Crabb*, 587 So. 2d 236, 239, 241 (Miss. 1991)). The "concern is not nearly so much what the parties *may have intended* as it is what they said, for the words employed are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy." *Simmons v. Bank of Miss.*, 593 So. 2d 40, 42 (Miss. 1992) (emphasis added).

¶17.　In *Oakman v. Town of Florence*, 624 So. 2d 995 (Miss. 1993), the Mississippi Supreme Court was tasked with interpreting whether the language of Mississippi Code Annotated section 17-1-17 (Supp. 1990) pertaining to voting on motions was ambiguous. In that case, during a regular meeting of the mayor and board of alderman, a motion was made and seconded to amend a zoning ordinance. *Id.* at 996. Of the five alderman on the

---

[8] Since we find that the language of the bylaws is unambiguous, we decline to discuss all of the canons of contract interpretation.

board, three voted in favor of the motion, and the remaining two abstained from voting. *Id.*

The mayor declared that the amendment passed on a vote of three-to-two. *Id.* The circuit

court affirmed the action of the Florence governing authorities. *Id.* On appeal, the

Mississippi Supreme Court held that section 17-1-17, which required all motions to be

approved by a "2/3 majority of all members of the Legislative body of the municipality," was

unambiguous. *Id.* at 997. The Mississippi Supreme Court further noted that the requirement

was, in fact, "so clear as to be incapable of being misunderstood" that it therefore "must be

construed as written." *Id.* (quoting *Ezell v. City of Pascagoula*, 240 So. 2d 700, 702-04

(Miss. 1970)). The Mississippi Supreme Court therefore reversed the circuit court's

decision. *Id.*

¶18.   Here, the plain language of the bylaws directly addresses the voting process by which

bylaws are to be amended. Amendments are discussed in Article V, Section III, and Article

XV. The exceptions to the majority vote requirement of Article V are written in detail. The

first exception (change of lot assessments) requires a majority *of all votes eligible to be cast*.

This is the very process that Jones is arguing should apply to amendment of bylaws. Yet the

third exception, which pertains to the amendment of bylaws, is devoid of this language. In

fact, the exception provides that amending bylaws "requires **a two-thirds (2/3) vote**."

(Emphasis added). Had the drafters of the bylaws intended for amendments to be passed by

a two-thirds vote of all votes eligible to be cast, they would have expressly provided so.

When read as a whole, the bylaws are clear and unambiguous. As to any questions before

the board, a majority of votes represented at the meeting shall decide the issue. For bylaw

11

amendments only, however, that majority requirement is modified to a two-thirds vote of those votes actually cast at the meeting. Since the phrase "votes eligible to be cast" is included elsewhere in the bylaws, yet it is not in the bylaw-amendment language, it is clear that the drafters intended amendments to be approved only when two-thirds of the votes actually cast at the meeting favor the amendment.[9]

¶19.    Importantly, further evidence as to the clear intent of the document is used on the very first page of the bylaws, which provides that a "two-thirds (2/3) vote" is defined as it is in Robert's Rules. According to Robert's Rules, a "two-thirds vote **means two-thirds of the votes cast** . . . not to be confused with a vote of two-thirds of the members present or two-thirds of the members." (Emphasis added). Both parties in their briefs occasionally conflate "2/3 votes present" with "2/3 members present" and use these phrases interchangeably. However, these standards represent two very different calculations under Robert's Rules. Despite the parties' misuse of these phrases, the language used in the bylaws is consistent. In fact, the bylaws point to Robert's Rules to explain the distinction. Robert's Rules includes a hypothetical where fourteen members vote on a question in a meeting when twenty members are present out of a total of seventy members. If the bylaws of this hypothetical organization required "a two-thirds vote," Robert's Rules dictates this number would be ten (two-thirds of the fourteen votes cast). This total is very different from a "two-thirds vote of members present," which, in this fictitious scenario, would be fourteen (two-thirds of the twenty members present, though only fourteen cast a vote). This total is also different from

---

[9] The history of other amendments to the bylaws using a two-thirds vote of those cast at the meeting supports this conclusion.

12

a "two-thirds vote of all the members," which here would be forty-seven (two-thirds of seventy, the total number of members). Applying this example to the facts before us, Article XV of Buena Vista's bylaws explicitly state that amendments will be approved by "a two-thirds (2/3) vote," and the bylaws define that term by referring to Robert's Rules. Therefore, two-thirds of the 206 votes cast were required to pass the amendment, which is a total of 138.[10] If the bylaws instead used the phrase "two-thirds of the members present," then the calculation would be based off those individual members physically present at the meeting. Alternatively, if the bylaws used the phrase "two-thirds of the members," then the amendment would require two-thirds of 399 (or at least 266). In fact, this is what Jones argues is the measure the board should have used. However, that reading directly conflicts with the plain language of the bylaws, the manner in which the bylaws defines the vote term, and the history as used by many previous boards in amending the bylaws.

¶20. The language used in the bylaws, as well as the illustrative examples that are peppered throughout, make the bylaws subject to only one reasonable interpretation. That is, the bylaws may be amended by a vote of a *two-thirds majority of the eligible votes cast at the meeting, not of those eligible to vote.* Jones's disagreement with this interpretation does not make the language ambiguous. *Cherry*, 501 So. 2d at 419. We conclude the language is unambiguous and therefore reverse and remand on this issue.

## II. Whether the chancery court erred in finding Amendment XX violates public policy.

¶21. Buena Vista next argues that the chancery court erred in finding that the ban on rental

---

[10] The exact number is 137.333.

properties was invalid because it violates public policy. A "unique characteristic of a homeowners association is the power of the association to control the use and enjoyment of property. The extent of the power is defined in the declaration, but usually encompasses use and size of buildings upon individual lots and regulation of the property commonly enjoyed by all lot owners." *Perry v. Bridgetown Cmty. Ass'n Inc.*, 486 So. 2d 1230, 1233 (Miss. 1986). Restrictions on rentals in subdivisions exist in our caselaw; this Court was recently faced with a ban on rental properties in *Wellsgate Homeowners Ass'n v. Hilton*, 296 So. 3d 744, 745 (¶1) (Miss. Ct. App. 2020). In that case, this Court addressed an issue in the context of a homeowner allegedly violating covenants in Lafayette County that prevented short-term rentals, and we reversed and remanded for the reconsideration of attorney's fees the HOA incurred by successfully enforcing the prohibition on short-term rentals. *Id*. at 749, 751 (¶¶18, 29-30). We find no public policy concerns.

¶22.  Here, Jones chose to purchase property in a neighborhood governed by the Buena Vista homeowner's association. As such, he was aware of the association's authority to affect his use and enjoyment of his property. Buena Vista followed its own bylaws when it conducted the vote on Amendment XX during its 2021 annual meeting. Accordingly, Amendment XX reflects a validly approved restriction on the use of member property and is not a violation of public policy.

## CONCLUSION

¶23.  For the reasons stated above, the chancery court erred in finding the Buena Vista bylaws are ambiguous. Likewise, the chancery court erred in determining that Amendment

14

XX violated public policy. Therefore, we reverse the chancery court's October 20, 2022 order and remand for further proceedings consistent with this opinion.

¶24. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**