## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00210-SCT

*CHARLES E. WARWICK d/b/a COAST MEADOWS MOBILE HOME PARK AND PARK DEVELOPERS, INC.*

*v.*

*GAUTIER UTILITY DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/95 |
| TRIAL JUDGE: | HON. BILL JONES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | EARL L. DENHAM |
| ATTORNEYS FOR APPELLEE: | DAVIS E. KIHYET |
| | HENRY P. PATE, III |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 4/15/1999 |
| MOTION FOR REHEARING FILED: | 4/29/99 |
| MANDATE ISSUED: | 7/8/99 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. On January 15, 1986, Appellee Gautier Utility District, through an eminent domain action, took property owned by Pasco Utilities, Inc. The property which was the subject of the eminent domain action was encumbered by reversionary and contractual interests held by Appellant Charles E. Warwick pursuant to a 1970 contract and a 1971 deed. Although Pasco was compensated for its loss, Charles Warwick was never made a party to the eminent domain action, and therefore, was not compensated for his interests in the property. Through a separate action in chancery court wherein Warwick sought to recover the property pursuant to his reversionary interest, Gautier Utility District (hereinafter GUD) and Warwick entered into a settlement agreement whereby Warwick agreed to release any claim over the subject property for consideration of $90,000. In a separate action pending in circuit court, which is the subject of this appeal, Warwick claimed that GUD, as a subsequent purchaser, is bound by the terms of the 1970 contract between Warwick and Pasco, Inc. which set the price of utility rates for Warwick's mobile home park, as well as imposing costs for maintenance and repair of the collection system upon GUD. On December 20, 1995, the Jackson County Circuit Court entered its order dismissing the action. Aggrieved, Charles E. Warwick and Park Developers, Inc., appeal to this court, assigning as error the following issues:

**I. WHETHER THE CIRCUIT COURT ERRED IN DETERMINING THAT A SETTLEMENT AGREEMENT REGARDING A PROPERTY DISPUTE FILED IN CHANCERY COURT SETTLED ALL MATTERS AT ISSUE BETWEEN PARTIES INCLUDING A SEPARATE CAUSE OF ACTION INVOLVING A CONTRACT DISPUTE IN CIRCUIT COURT?**

**II. WHETHER THE CIRCUIT COURT ERRED IN ITS DECISION THAT GAUTIER UTILITY DISTRICT HAS NO LIABILITY WITH REGARD TO THE NOVEMBER, 1970 AGREEMENT?**

## STATEMENT OF THE FACTS

¶2. On November 25, 1970, Charles E. Warwick, individually and as President of Park Developers, Inc., entered into an agreement with Pasco Enterprises, Inc. The agreement stated that as consideration for the conveyance of certain land and utility easements from Warwick to Pasco Enterprises, Inc., Pasco was to construct and operate waste treatment facilities and sewer lines for the benefit of a mobile home park and subdivision being developed by Warwick d/b/a Park Developers, Inc. and to charge a specified schedule of rates for these services.

¶3. The 1970 Agreement provided in part:

III.

Pasco shall seek the approval and ratification of said Public Service Commission of rates for sewerage collection, treatment, and disposal based on the following formula:

0-25 lots occupied - 50% of water consumption at the published rates for water of Seashore Utilities, Inc.

26-50 lots occupied - 50% of water consumption at 40¢ per 100 cubic feet

Over 50 lots occupied - 50% of water consumption at

30¢ per 100 cubic feet

Costs for maintenance and repair of the collection system shall be borne as follows:

1st year - Developers 100% - Pasco 0%

2nd year - Developers 50% - Pasco 50%

3rd year - Developers 25% - Pasco 75%

Following - Pasco 100%

In no event shall Developers have any responsibility to maintain or repair the sewerage treatment facility or any lift stations or lines situated outside the boundaries of Developer's property. Further, Pasco agrees that it will, at all times, maintain adequate sewerage collection and treatment facilities for the Developers, not in excess of rates set by the Mississippi Public Service Commission.

¶4. On May 31, 1971, Warwick conveyed the property to Pasco Enterprises in a Sewerage Easement and Deed which specifically referred to the 1970 Agreement and included a land description for the sewerage treatment plant. This Sewerage and Easement Deed stated in part:

> As to the property described in Exhibit "C", title thereto is conveyed in fee simple but solely for use as a sewerage treatment plant or facility and in the event it is not so utilized for a period of thirty (30) consecutive days after completion of construction [,] title will revert to the Grantor, his heirs, devisee or assigns.
>
> IN WITNESS WHEREOF, the Grantor has executed this instrument this the 31[st] day of May, 1971.
>
> /s/ Charles E. Warwick

¶5. Warwick developed Coast Meadows Mobile Home Park (hereinafter "Coast Meadows"), and Pasco Enterprises constructed the waste water treatment facility on the land acquired from Warwick as well as sewer lines in the easements. Pasco Enterprises also obtained approval from the Mississippi Public Service Commission for the rates agreed upon by the parties in the 1970 Agreement. The rate schedule remained in effect as contracted between Pasco[1] and Warwick until the assets of Pasco Utilities, Inc., including the waste water treatment facility property, were taken through eminent domain by Gautier Utility District. From that point forward, Gautier Utility District provided water and sewer services to Coast Meadows according to its own rate schedule. On October 19, 1993, Charles Warwick[2] d/b/a Coast Meadow Mobile Home Park filed a complaint against Gautier Utility District in the Circuit Court of Jackson County, Mississippi (1) charging that Gautier Utility District overcharged Charles Warwick and (2) seeking to enforce the 1970 contract between Pasco Enterprises, Inc. and Park Developers, Inc.

¶6. On October 5, 1994, in consideration of $90,000, Warwick executed a Release and Settlement Agreement regarding his separate suit in chancery court which he filed to recover the property upon which Pasco's waste water and treatment facility had been built and also to recover the value of its sewage treatment plant.

¶7. The circuit court relied upon the chancery court settlement agreement in finding that the agreement released Gautier Utility District from any further liability relating to the lawsuit and finding that Gautier Utility District ". . . has no liability regarding the enforcement of the Agreement dated November 25, 1970 between Pasco Enterprises, Inc. and Park Developers, Inc."

## DISCUSSION OF THE ISSUES

**I. WHETHER THE CIRCUIT COURT ERRED IN DETERMINING THAT A SETTLEMENT AGREEMENT REGARDING A PROPERTY DISPUTE FILED IN CHANCERY COURT SETTLED ALL MATTERS AT ISSUE BETWEEN PARTIES INCLUDING A SEPARATE CAUSE OF ACTION INVOLVING A CONTRACT DISPUTE IN CIRCUIT COURT?**

¶8. The standard of review for questions concerning the construction of contracts are questions of law that are committed to the court rather than to the fact finder. *Mississippi State Highway Comm. v. Patterson Enters., Ltd.*, 627 So. 2d 261, 263 (Miss. 1993). Appellate courts review questions of law de novo. Legal purpose or intent should first be sought in an objective reading of the words employed in the

contract to the exclusion of parol or extrinsic evidence. ***Cooper v. Crabb***, 587 So.2d 236, 239 & 241 (Miss. 1991). Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. ***Id.*** at 241. Instead, when construing a contract, the court will read the contract as a whole, so as to give effect to all of its clauses. ***Brown v. Hartford Ins. Co.***, 606 So.2d 122, 126 (Miss. 1992). One should look to the "four corners" of the contract whenever possible to determine how to interpret it. ***McKee v. McKee***, 568 So.2d 262, 266 (Miss. 1990). Therefore, when interpreting a contract, the court's concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. ***Simmons v. Bank of Mississippi***, 593 So.2d 40, 42-43 (Miss. 1992).

¶9. Warwick charges in the case *sub judice* that the circuit court erred in interpreting the chancery court release to include the circuit court action. He asserts that the circuit court's holding is contrary to the intent of the parties as clearly indicated by the words of the Release and Settlement Agreement. Warwick argues that the Release and Settlement Agreement refers only to the claims and issues connected with the specific cause of action in Jackson County Chancery Court which involved the taking of certain property of Warwick's in which he held a reversionary interest and not to all causes of action that may exist between the parties. Specifically, Warwick argues that the chancery court cause of action did not concern or decide any claim or issue related directly or indirectly to the 1970 Agreement which Warwick sought to have enforced in the circuit court matter. Thus, he argues that Gautier Utility District is not released from liability under the terms of the 1970 Agreement. We agree.

¶10. The Release and Settlement Agreement specifically states as follows:

> That Charles E. Warwick, being an adult resident citizen above the age of twenty-one (21), for the consideration of Ninety Thousand and No/100 Dollars ($90,000.00), to him in hand paid, including cash and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, does hereby release and forever discharge Gautier Utility District and United States Fidelity and Guaranty Company, their agents, servants, employees, successors, assigns, executors, administrators, and all other persons, firms and /or corporations, except as specified herein, of and from any and all claims of any kind or nature growing out of or in any way connected with the taking of the undersigned's property which is in dispute in the lawsuit known as <u>Charles E. Warwick v. Gautier Utility District</u> filed in the Chancery Court of Jackson County, Mississippi, bearing Cause No. 58,113.

¶11. The Release and Settlement Agreement clearly did not apply to the action for breach of contract pending in circuit court. Although the agreement does state that it releases Gautier Utility District "from any and all claims of any kind or nature growing out of or in any way connected with the taking of the undersigned's property which is in dispute in the lawsuit known as <u>Charles E. Warwick v. Gautier Utility District</u> filed in the Chancery Court of Jackson County, Mississippi, bearing Cause No. 58,113", a fair and complete reading of the agreement reveals that the intent of the parties was to extinguish all claims regarding the taking of the real property only. The release of "any and all claims" clearly refers to claims arising from the taking of the property. Irrespective of the taking, the separate claim for breach of contract still stands. Both parties to the chancery court lawsuit were aware of the lawsuit pending in circuit court, yet in the agreement they limited the release and settlement agreement to the "lawsuit known as <u>Charles E. Warwick v. Gautier Utility District</u> filed in the Chancery Court of Jackson County, Mississippi, bearing Cause No. 58,113." While the agreement specifically addressed the claim involving the taking of property, the breach

of contract claim pertaining to the dispute over utility charges was never mentioned in the Release and Settlement Agreement. It is clear through examination of the words incorporated in the Release and Settlement Agreement that the parties did not intend a release or settlement of the breach of contract claim pending in Circuit Court.

¶12. Additionally, a complete reading of the Release and Settlement Agreement reveals that the parties intended that the transcript of proceedings held before Chancellor Randle on August 22, 1994, be included as part of the record before this Court. Unfortunately, the transcript of those proceedings is not part of the record before this Court. However, an order issued by Chancellor Randle on May 17, 1996, which is part of the record before this Court, specifically mentions the August 22, 1994, proceedings. In the May, 1996, order Chancellor Randle recalled from the August, 1994, proceedings that, "the settlement was to encompass the Chancery litigation as there was apparently other litigation pending before the Circuit Court." The statement by Chancellor Randle is strong, if not conclusive, evidence that the parties did not intend to include the circuit court controversy in the settlement reached in the chancery court dispute. Therefore, we hold that the Release and Settlement Agreement did not release Gautier Utility District from liability regarding Warwick's breach of contract claim.

### II. THE CIRCUIT COURT ERRED IN ITS DECISION THAT GAUTIER UTILITY DISTRICT HAS NO LIABILITY WITH REGARD TO THE AGREEMENT DATED NOVEMBER 25, 1970.

¶13. Having determined that the Release and Settlement Agreement did not release Gautier Utility District from liability concerning the breach of contract claim, it is now necessary to determine whether Warwick's claim for breach of contract is indeed a valid claim. Warwick argues that when Gautier Utility District took the land from Pasco Enterprises through eminent domain, it took on the obligation of the 1970 contract between Pasco and Warwick which set the utility rates according to a specific rate schedule.

¶14. In *Morley v. Jackson Redev. Auth.,* 632 So. 2d 1284, 1297 (Miss. 1994), we held that "the restrictive covenant is an interest in land subject to compensation . . . ." The 1970 agreement between Warwick and Pasco clearly imposed a burden upon the land now owned by Gautier Utility District, and a benefit upon Warwick, and therefore, created real covenants that were to run with the land. *See*, *Vulcan Material Company v. Miller, 691 So.2d 908, 913-914 (Miss. 1997)*. The deed conveying the property interest from Warwick to Pasco specifically referred to and made the conveyance subject to the 1970 Agreement, therefore putting any subsequent purchaser on notice of the agreement. *See Payne v. Campbell*, 250 Miss. 227, 240, 164 So. 2d 780, 785 (Miss. 1964) ("Purchasers are charged with notice of all the instruments referred to in the deed involved."). As such, the rights in the 1970 agreement are compensable property rights, the taking of which requires due compensation from Gautier Utitlity District. *See Morley*, 632 So. 2d at 1296-97. Pursuant to the 1970 Agreement, Warwick has a contractual right to an established schedule of rates and the repair and maintenance of the sewerage collection system by Gautier Utility District at its expense.

¶15. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH AND WALLER, JJ., CONCUR. COBB, J., NOT PARTICIPATING.**

1. On March 25, 1985, Pasco Enterprises, Inc. conveyed its interest to Pasco Utilities, Inc., who procured a Certificate of Public Convenience and Necessity in June, 1985. The property was deeded to Pasco Utilities, Inc. ". . . for the purpose of carrying out the terms of the contract by providing water, sewer, and waste water treatment to what became known as Charles E. Warwick d/b/a Coast Meadows Mobile Home Park at the schedule of rates."

2. In February, 1988, Park Developers, Inc. conveyed the property to Charles E. Warwick, individually.