IRVING, P.J.,
for the Court:
¶ 1. This appeal arises out of a real-estate contract between Villas of Wind-song, Ltd. and RGT/Charleston Partners, Ltd. The Harrison County Circuit Court granted summary judgment in favor of RGT. Feeling aggrieved, Villas of Wind-song appeals and asserts that: the contract requires that judgment be entered in its favor; all the provisions of the contract merged into the deed and were extinguished at the closing; and genuine issues of material fact should have precluded the granting of summary judgment in favor of RGT.
¶ 2. We find that a separate agreement, as called for in the contract, was never entered into and that the provisions of the contract were extinguished when the deed was executed. Therefore, we reverse and render the circuit court’s judgment.
*1129 FACTS
¶ 3. In 2004, RGT entered into a contract with Arbor Properties, Inc.[1] to purchase a piece of real estate in Harrison County, Mississippi. Shortly thereafter, Arbor Properties transferred its interest in the contract to Villas of Windsong, which closed the transaction in October 2004. At the time of closing, permits had been obtained for construction of 240 mul-ti-family apartment units on the property.
¶ 4. In 2008, the City of Biloxi, Mississippi, issued building permits for 88 more apartment units on the property. On July 22, 2008, RGT filed a complaint against Villas of Windsong,[2] demanding an additional $403,333.04 on the basis of Paragraph 22 of the contract. Paragraph 22 reads, in its entirety:
22. ADDITIONAL MULTI-FAMILY UNITS. At or prior to [e]losing, Seller and Purchaser shall enter into an agreement whereby if Purchaser (or Purchaser’s assigns) obtains approval by the City to build more than 240 multi-family units on the [pjroperty, then, within thirty (30) days of obtaining said approval, Purchaser (or Purchaser’s assigns) shall pay to Seller an amount equal to $4,583.33 times the number of said units in excess of 240.
Despite Paragraph 22, which clearly reads that the parties were supposed to enter into an agreement “[a]t or prior to [c]losing,” a separate agreement regarding additional units was never entered into by the parties.
¶ 5. On June 17, 2009, RGT filed a motion for summary judgment. The motion alleged that it was “undisputed that the [ajgreement was entered between the parties, that 88 units above 240 units have subsequently been approved for construction on the property[,] and that [Villas of] Windsong [has] not paid RGT the stipulated amount in the [a]greement for the additional units.” The memorandum that accompanied the motion stated that: “it is undisputed that RGT and [Villas of] Wind-song entered into the [a]greement and explicitly expressed their intent regarding their obligations in the event the City of Biloxi approved the construction of additional units.... ” The memorandum also acknowledged: “[Villas of Windsong] will likely argue that a separate contract outlining the very same terms that are expressed in Paragraph 22 ... was contemplated, and that since a separate contract was not entered[,] the provisions of Paragraph 22 are now somehow unenforceable.” The memorandum then argued that the contract did not require a separate written agreement and that Villas of Wind-song should not be able to use the fact that there was no separate agreement to evade its obligations to RGT.
¶ 6. Gordon Thames Jr., the owner of Villas of Windsong, filed an affidavit in opposition to RGT’s motion for summary judgment. In it, Thames averred the following in pertinent part:
After Hurricane Katrina[,][an] investigation began to determine if portions of Parcel 5 ... could be used for apartment purposes. This process eventually led to mitigating 4.89 acres and demuck-ing and filling the same at a cost of $698,421.52.... The Plaintiffs were furnished an itemized accounting for all *1130 these expenses showing that in order to make this property available for additional apartment construction, the sum of $698,421.52 was paid to make the property suitable. The property purchased from RGT was not suitable for such 88 units until this sum was expended to make it so.
* * *
At one of the City[’s] meetings seeking approval of the number of units, ... the Seller’s Agent ... told the City that we would like to put 252 units on the property. Due to the extensive amount of wetlands on the property, the requirements of the City Code in Biloxi, parking constraints, etc., this was not possible. Only 240 units were eventually allowed. It was because we were led to believe [that] more units may be possible that Paragraph 22 was put in the Contract. Since the approval was for only 240, Paragraph 22 never came into fruition.
The City of Biloxi did, on March 4, 2008, issue Pelzer Homes, my building firm, permits to build 88 additional units, but only after $698,421.52 was spent to mitigate wetlands, demuck, fill[,] and otherwise prepare said property and make it suitable for such use.
The [contract entered into in 2004 called for an [a]greement to be entered into regarding additional units. Such [ajgreement was not entered into. No request was made of Arbor Properties, Inc. or Windsong to enter [into] such [a]greement,- and such [paragraph (Paragraph 22) was not addressed in any of the four [a]mendments to the [contract.
¶ 7. Villas of Windsong filed its own memorandum in opposition to RGT’s motion for summary judgment. In the memorandum, Villas of Windsong argued that “the purpose of this paragraph was to give the Seller an opportunity to insist on an amendment to the [c]ontract if, prior to closing, the City of Biloxi gave approval for more than 240 units to be built on the property.” Villas of Windsong also argued that Paragraph 22 was inherently ambiguous and that the circuit court should, therefore, use extrinsic evidence in interpreting the contract. Specifically, Villas of Windsong urged the circuit court to consider Thames’s affidavit in considering the motion for summary judgment. Villas of Windsong further noted that if the paragraph were viewed as a contract to enter into an agreement, the statute of limitations would have run on RGT’s claim on October 29, 2007; RGT filed its lawsuit in 2008.
¶ 8. In December 2009, the circuit court issued a judgment containing findings of fact and conclusions of law regarding RGT’s motion for summary judgment. That judgment stated, in pertinent part, the following:
On March 4, 2008, [Villas of Windsong] received approval from the City of Biloxi for the construction of 88 units in addition to the 240 units previously approved for the property.
Subsequent to the approval of additional units, [RGT] requested from [Villas of Windsong] the additional 403,383.04 ($4,583.33 x 88 units) pursuant to Paragraph 22 of the contract. After [Villas of Windsong] failed to pay, [RGT] filed a complaint on July 22, 2008, and alleged breach of contract. [RGT] now moves for summary judgment.
[[Image here]]
Despite [Villas of Windsong’s] assertion to the contrary, Paragraph 22 does not require a separate written agreement. Instead, Paragraph 22 simply states [that] the parties “shall enter into an agreement.” “A stipulation to reduce a *1131 valid written contract to some other form does not affect its validity, and the stipulation may not be used by either of the parties for the purpose of ... evading performance of any of the provisions of the contract.” Busching v. Griffin, 542 So.2d 860, 868 (Miss.1989). [Villas of Windsong] should not be able to evade payment under Paragraph 22 under the guise that a separate written agreement was required.
[Villas of Windsong] next argue[s that] the merger doctrine applies. Under the merger doctrine, previous negotiations or contracts are merged into a deed of conveyance. Knight v. McCain, 531 So.2d 590, 595 (Miss.1988). However, in Knight, the court adopted the majority rule and found [that] collateral or independent agreements, which are to be performed subsequent to the conveyance, are not merged into the deed of conveyance. Id. at 595-96. Under Paragraph 9 of the contract, [RGT] was responsible for obtaining the necessary zoning approvals from the City of Biloxi for the construction of the initial 240 units. [RGT] was also responsible for obtaining the necessary wetlands permits for the construction of the initial 240 units. However, under Paragraph 22, [Villas of Windsong was] required to obtain approval for the construction of additional units on the property following transfer. Thus, the obligation of [Villas of Windsong] under Paragraph 22 is separate and collateral from the obligations of [RGT] prior to closing on the property and is distinguishable from the provisions of the contract regarding title, possession^] and quantity of land being transferred.
[Villas of Windsong] next arguefs that] the statute of limitations has expired on Plaintiffs claim of breach of contract. Specifically, [Villas of Windsong asserts that] the deeds of trust were executed on October 29, 2004, and therefore expired on October 29, 2007, prior to the [c]omplaint being filed in this matter. However, the alleged breach of contract did not occur until March 2008. The [c]omplaint in this matter was filed July 22, 2008, well within the applicable three years. Thus, the statute of limitations has not expired.
[Villas of Windsong] last argue[s that] “a travesty of justice would occur if [Villas of Windsong was] required to pay for additional units after they paid almost $700,000 to mitigate and make the property suitable for the additional units.” Payment under Paragraph 22 applies when [Villas of Windsong] obtain[s] the necessary approval from the City of Biloxi to build additional units on the property. Any construction costs or costs associated with the approval are irrelevant to the issue before the [c]ourt.
Having so found, the circuit court granted summary judgment in favor of RGT.
¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 10. The standard of review for decisions concerning summary judgment is well established: summary judgment “should be granted only when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” State ex rel. Hood v. Louisville Tire Ctr., Inc., 55 So.3d 1068, 1072 (¶ 9) (Miss.2011) (quoting M.R.C.P. 56(c)). When reviewing a circuit court’s grant of summary judgment, we review the record de novo, “in the light *1132 most favorable to the nonmoving party.” Id. (citing Evan Johnson & Sons Constr., Inc. v. State, 877 So.2d 360, 364 (¶ 11) (Miss.2004)).
¶ 11. When reviewing a contract, an appellate court employs a de novo standard of review. Cherokee Ins. Co. v. Babin, 37 So.3d 45, 48 (¶ 8) (Miss.2010). An appellate court “first look[s] to the express wording of the contract itself, looking at the contract as a whole, to the exclusion of extrinsic or parol evidence.” Id. (citing Warwick v. Gautier Util. Dist., 738 So.2d 212, 215 (¶ 8) (Miss.1999)). Only if the parties’ intent is unclear from the express wording of the contract will we consider the “ ‘canons’ of contract construction.” Id. (quoting HeartSouth, PLLC v. Boyd, 865 So.2d 1095, 1105(26) (Miss.2003)). If the contract remains ambiguous after applying the canons, we will consider extrinsic evidence. Id.
¶ 12. Paragraph 22 states, in its entirety:
22. ADDITIONAL MULTI-FAMILY UNITS. At or prior to [cjlosing, Seller and Purchaser shall enter into an agreement whereby if Purchaser (or Purchaser’s assigns) obtains approval by the City to build more than 240 multi-family units on the [property, then, within thirty (30) days of obtaining said approval, Purchaser (or Purchaser’s assigns) shall pay to Seller an amount equal to $4,583.33 times the number of said units in excess of 240.
RGT claims that this paragraph constituted a binding agreement that was immediately and automatically executed at closing. However, this reading of the paragraph renders some of the provision’s terms obsolete. In general, “[w]hen construing a contract, [an appellate court] will read the contract as a whole, so as to give effect to all of its clauses.” One S., Inc. v. Hollowell, 963 So.2d 1156, 1162 (¶ 10) (Miss.2007) (quoting Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.2d 107, 111 (¶10) (Miss.2005)).
¶ 13. In order to give effect to all of the paragraph’s clauses, RGT’s interpretation cannot be accepted. The paragraph clearly states that RGT and Villas of Windsong would enter into an agreement “[a]t or prior to [c]losing.” If RGT’s interpretation of this provision were correct, the contract would have been worded: “At closing, the parties agree....” The paragraph, as written, clearly contemplates the entry of a separate agreement (“shall enter into an agreement”) that either party could compel prior to or at closing. Neither party invoked the provision by the time of closing; in fact, neither party ever attempted to enter into an agreement whereby Villas of Windsong would pay RGT more upon the approval of additional units.
¶ 14. Given the explicit language of the contract, we find that the circuit court erred in granting summary judgment on behalf of RGT. A separate agreement was contemplated by the contract, but never actually entered into by the parties. Although there is no doubt that RGT could have compelled Villas of Windsong to enter into such an agreement at or prior to closing, it did not do so at that time.
¶ 15. Accordingly, we reverse and render the circuit court’s judgment. Our disposition of this issue renders Villas of Windsong’s remaining issues moot.
¶ 16. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
*1133 LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.

. A variety of Arbor corporations have been involved in this case at different times; to the best of this Court’s knowledge, all of these corporations are related and are owned by a single entity.

. The complaint was filed against both Villas of Windsong and Arbor Properties, although Arbor Properties had already transferred its interest in the property to Villas of Windsong. In 2007, Villas of Windsong deeded the property to Arbor Place.