# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00069-COA

| | |
|---|---|
| JEFFREY HECKENBERGER, BARBIE HECKENBERGER, DARRYL GIBBS, HOWELL COBB WARE, JR. AND MIKEL SHANNON MCMILLIAN | APPELLANTS/ CROSS-APPELLEES |

v.

| | |
|---|---|
| LIVINGSTON DEVELOPMENT CORPORATION AND MADISON COUNTY, MISSISSIPPI, BOARD OF EDUCATION | APPELLEES/ CROSS-APPELLANTS |

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2017 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN HOWARD SHOWS |
| | JOHN SAMUEL GRANT IV |
| | RICHARD ALLEN EISENBERGER JR. |
| ATTORNEYS FOR APPELLEES: | JERRY L. MILLS |
| | JOHN PRESTON SCANLON |
| | HOLMES S. ADAMS |
| | LINDSEY O. WATSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED.  ON CROSS-APPEAL: AFFIRMED - 10/08/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., TINDELL AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.    Five homeowners—Jeffrey Heckenberger, Barbie Heckenberger, Darryl Gibbs,

Howell Cobb Ware Jr., and Mikel Shannon McMillian (Homeowners)[1]—from the Livingston

---

[1] Although more homeowners were affected, these five are the only ones who appeal.

Subdivision in Madison County sued three defendants: Livingston Development Corporation (Developer), Livingston Property Owners Association (Association), and the Madison County School Board.[2] The Homeowners sought a declaratory judgment that (1) the Developer was an owner and owed assessments to the Association; (2) a continuing lien existed for the unpaid assessments; (3) the Developer should be stripped of its voting rights until it pays the assessments; and (4) the Developer is an owner of the common areas. At the conclusion of the Homeowners' case-in-chief, the Developer made a motion to dismiss pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure and argued that the Homeowners failed to show a right to relief.

¶2. The Madison County Chancery Court granted the Developer's motion to dismiss in part and deferred ruling on the following two issues until the close of all of the evidence: (1) the Homeowners' request for a declaratory judgment that the Developer is an "owner" of certain lots and (2) the issue of attorney fees. At the close of the case, the chancery court ruled that the Developer was an owner because its leasehold interest in and to its remaining lots fell within the definition of an "owner" as provided in the covenants. But the chancery court dismissed the Homeowners' requested relief regarding this issue because it found that the Association did not provide the Developer with written notice of the assessments to the Developer as required in Section 5.01 of the covenants. The court also ruled that each party was to bear its own attorney fees. The Homeowners now appeal the chancery court's

---

[2] The Homeowners are also members of the Association. The Association and School Board were joined as necessary parties, but the Homeowners did not seek relief from either party.

2

decision. The Developer cross-appeals the court's finding that it is an owner and that it was not entitled to attorney fees. Finding no error, we affirm.

**FACTUAL BACKGROUND**

¶3. In 1999, the School Board entered into a development lease with the Developer for the purpose of developing and marketing subdivision lots for long-term residential leases.[3] The land to be developed is Sixteenth Section land[4] that is owned by the State of Mississippi and held in trust by the School Board. After entering into the lease,[5] the Developer divided the land into fifty-nine lots for residential use and certain common areas.

¶4. In 2001, the School Board and the Developer executed and filed, in the land records of Madison County, the "Corrected Declaration of Covenants, Conditions and Restrictions for Livingston Subdivision."[6] Under the terms of the covenants, the Developer and the District created and organized the Association. They delegated and assigned to the Association the powers and duties for the administration and maintenance of the common areas and the lakes, the administration and enforcement of the provisions of the covenants, and the determination, collection, and disbursement of the maintenance and special

---

[3] This lease has been renewed several times—2004, 2009, and 2014—for five year terms.

[4] Mississippi Code Annotated section 29-3-1 (2010) set aside Sixteenth Section school lands to be held in trust for the benefit of public schools. Under this same section, the board of education in each district is given control and jurisdiction of said school trust lands. Boards of education are also authorized to lease Sixteenth Section lands for residential development.

[5] There were several corrections or amendments to the lease in 1999 and 2004.

[6] The original covenants document is not a part of the record before this Court.

assessments and other charges. The common areas included, among other things, the streets throughout the subdivision, a drainage easement, and a lake.

¶5. The covenants include several definitions. An owner is defined in Article I, Section 1.01 as:

> the record holder, whether one or more Persons, of a Leasehold Interest or a fee or undivided fee interest in or to any Lot, including contract sellers, but excluding those Persons who hold an interest in a Lot merely as security for the performance of an obligation or payment of debt. Each owner shall be either a Class A Member or a Class B member as provided by Article III. The District shall not be considered to be an owner.

In the same section a member is defined as "each Person who holds or has any class of membership in the Association as provided by Article III." According to Article III, Section 3.01, the covenants membership includes:

> the Members of the Association shall be and consist of every Person who is, or who becomes, an owner of record of the fee title to or a Leasehold Interest in a Lot and is included in the definition of an Owner under Article I. When more than one Person owns or holds an interest or interests in a Lot, then all such persons shall be Members. For the purposes of membership in the Association, the District shall not be considered to be an Owner.

¶6. For voting purposes, there are two classes of members, Article III, Sections 3.02 and 3.03. Class A members who are entitled to one vote per lot or leasehold are all members except the Declarant (i.e., the Developer). The Developer is the only Class B member, and it is entitled to ten votes for each unsold lot it still owns. While defined separately, elsewhere the covenants appear to use the terms "owners" and "members" interchangeably.

¶7. The marketing and sale of the lots commenced in 2002. Since then, the Association has required owners/members to pay annual assessments in the amount of $500 per lot

4

pursuant to Article V, Section 5.01 of the covenants. Failure to pay the assessment could result in the suspension of a member's voting rights pursuant to Article IX, Section 9.01(b) of the covenants. The Developer is a member of the Association, and it is undisputed that it has never paid any assessments. When the amended complaint was filed, the Developer retained an interest in nine lots. At the beginning of the trial, the Developer retained an interest in six lots.

## PROCEDURAL HISTORY

¶8. On November 24, 2014, the Homeowners filed a complaint on behalf of the Association. They requested a declaratory judgment, a preliminary injunction, and a permanent injunction. The Homeowners asserted that the Developer owned certain lots within the subdivision and was liable to the Association for assessments pursuant to the covenants. The Homeowners also claimed, among other things, that the Developer was obligated to make certain repairs to the subdivision's common areas; that it should be stripped of all of its voting rights; and that it should be prevented from selling any more lots because a continuing lien existed for its unpaid assessments.

¶9. On April 22, 2015, the Developer filed a motion to dismiss arguing that the Homeowners lacked standing to sue under Mississippi Code Annotated section 79-11-193(3) (Rev. 2013) because the Homeowners never made a demand to the Association. The Developer also requested attorney fees.

¶10. The chancery court entered an order denying the Homeowners' preliminary injunction request on April 6, 2016. On May 2, 2016, the chancery court entered a separate order

granting the Developer's motion to dismiss and again denying the preliminary injunction. As to the standing issue, the court found that the Homeowners, as owners, had individual rights to sue under the covenants, but not on behalf of the other homeowners in the Association. The court granted the Homeowners thirty days within which to amend their complaint to sue in their individual capacities.

¶11. On May 24, 2016, the Homeowners filed their amended complaint for a declaratory judgment and the enforcement of the covenants. The Homeowners requested that the court determine and declare that: (1) the Developer is or was the owner of nine lots in the subdivision and is liable for unpaid assessments; (2) a continuing lien existed on the nine lots and the Developer should be personally liable for the lien; (3) the Developer was not entitled to cast any votes until the assessments were paid; and (4) the Developer was the owner of the common areas and has not conveyed them to the Association.

¶12. On February 3, 2017, the Developer filed a motion to dismiss the Homeowners' amended complaint or, alternatively, for summary judgment. The Developer argued that the matter should be dismissed because the Homeowners failed to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure. The Developer also argued that summary judgment was proper because it had no obligation to make the requested repairs to the common areas.

¶13. On April 3, 2017, a four-day bench trial on the merits began after the court denied the Developer's motion to dismiss. At the conclusion of the Homeowners' case-in-chief, the Developer moved to dismiss pursuant to Rule 41(b). The court granted the Developer's

6

motion ore tenus to dismiss all but two counts within the Homeowners' amended complaint. The court dismissed the Homeowners' requested relief by holding that: (1) the Developer was not liable for assessments because it had not received written notice of them; (2) the Homeowners failed to show that a continuing lien existed against the Developer; (3) the Developer was entitled to vote; and (4) the Homeowners failed to prove that the Developer owned or was responsible for the upkeep of the common areas. The court deferred ruling on two issues until the close of all of the evidence: (1) the Homeowners' request for a declaratory judgment that the Developer was the "owner" of certain lots, and (2) the issue of attorney fees. After the Developer rested its case, the Homeowners asked the court to reconsider its decision regarding ownership of the common areas. The court denied that request because it had not entered a final judgment.

¶14.    On April 25, 2017, the Homeowners filed their notice of appeal from the court's April 6, 2017 bench ruling granting in part the Developer's Rule 41(b) motion to dismiss. The Mississippi Supreme Court dismissed the Homeowners' appeal for lack of a final judgment.

¶15.    On December 15, 2017, the chancery court entered its final judgment. The court ruled that the Developer was the "owner" of its remaining lots. But the court dismissed the Homeowners' request for unpaid assessments because the Developer was not given written notice as required by the covenants. Because the Developer had not received written notice of the assessments, the court ruled that there was no continuing lien on its lots, and its voting rights would not be suspended. The court also found that because the Homeowners failed to prove that the Developer owned the common areas, they were not entitled to relief on that

7

issue either. Lastly, the court denied both parties' requests for attorney fees.

¶16. The Homeowners timely filed a notice of appeal. They argue that the court erred in ruling that: (1) the Developer did not owe assessments; (2) a continuing lien did not exist against the Developer; (3) the Developer's voting rights should not be suspended; (4) the Homeowners were not entitled to attorney fees; and (5) the Homeowners' motion to reconsider the court's bench ruling on the common areas was not ripe due to the fact that a final judgment had not been entered.

¶17. The Developer cross-appeals and argues that the court erred in finding that it was an owner because it has a development lease on gross acreage as opposed to a long-term residential lease on individual lots. Therefore, the Developer reasons that it did not fit within the definition of an owner. The Developer also argues that it is entitled to attorney fees because the Homeowners' suit was frivolous, made in bad faith, without reasonable cause, and for an improper purpose.

**STANDARD OF REVIEW**

¶18. "In a bench trial, after a plaintiff has completed the presentation of his evidence, the defendant may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."[7] *Dissolution of Marriage of Lewis v. Lewis*, 269 So.

---

[7] Mississippi Rules of Civil Procedure 41(b), involuntary dismissal, states:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. **After the plaintiff, in an action tried by the court without a jury**, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, **may move for a dismissal on the ground that upon the facts and**

8

3d 230, 235 (¶13) (Miss. Ct. App. 2018) (internal quotation marks omitted). When considering a Rule 41(b) motion to dismiss, the judge must view the evidence fairly, rather than in the light most favorable to the plaintiff. *Id.* at (¶14). In other words, "the trial judge should give the plaintiff's evidence only 'such weight and credibility as he or she would ascribe to it if he or she were making findings of fact and rendering final judgment.'" *Id.* "If the judge would find for the defendant on the evidence presented, the case should be dismissed." *Id*. (internal quotation marks omitted). Also, "[t]he motion should be granted if the plaintiff has failed to prove one or more essential elements of his claim or if the quality of the proof offered is insufficient to sustain the plaintiff's burden of proof." *Id.* However, "the court must deny a motion to dismiss *only* if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." *Id.*

¶19. "This Court applies the substantial evidence/manifest error standard to an appeal of a grant or denial of a motion to dismiss pursuant to Rule 41(b)." *Id.* at 236 (¶15). The trial judge's decision will not be disturbed on appeal unless it was manifestly wrong. *Id*. Moreover,

---

**the law the plaintiff has shown no right to relief**. The court may then render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court may make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any other dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

(Emphasis added).

[i]n reviewing appeals taken from chancery court rulings, we apply a limited standard of review in that the factual findings of the chancery court, if supported by substantial evidence, will not be disturbed unless the chancery court abused its discretion, applied an erroneous legal standard, or its findings are manifestly wrong or clearly erroneous.

*Matter of Estate of Smith v. Boolos*, 204 So. 3d 291, 305 (¶22) (Miss. 2016).

## DISCUSSION

### I. Whether the Developer is the "owner" of the unsold residential lots.

¶20. We discuss this issue first because "owners" as defined in the covenants are required to pay assessments. The chancery court ruled that the Developer qualifies as an owner. On cross-appeal, the Developer argues that it is not an "owner" because it only holds a leasehold interest in raw acreage and not in developed lots. We disagree and find that the chancery court correctly interpreted the covenants' unambiguous definitions. In addition, there was substantial evidence to support the court's finding that the Developer is an owner.

¶21. Whether the Developer is an owner requires an examination of the terms of the leases and covenants, to which the Developer is a party. The Supreme Court has held that questions concerning the construction and interpretation of contracts are questions of law. *Warwick v. Gautier Util. Dist.,* 738 So. 2d 212, 215 (¶8) (Miss. 1999). The supreme court has also held that whether a contract is ambiguous is a question of law and, if it is not ambiguous, the court must enforce the contract as written. *Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 751 (¶7) (Miss. 2003). Further, we review questions of law de novo. *Health Mgmt. Assocs. Inc. v. Weiner*, 264 So. 3d 747, 749 (¶10) (Miss. 2019).

¶22. In this case, the covenants' language is unambiguous. It clearly defines an "owner"

as a leaseholder. The covenants make no distinction between the types of leasehold interest a party may own. Even Steve Horn, the Developer's president, admitted on cross-examination that the covenants make no distinction between the interest held by holders of personal, long-term residential leases and the Developer's interest in the lots it still held under its development lease. The Developer essentially argued to the chancellor that the parties intended a more precise definition than appears in the covenants. But "our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Id*. at 752 (¶10). Here, we find that the covenants' language is unambiguous and that the chancery court correctly applied the contract definitions as written.

¶23. The chancery court considered the covenants' definitions of an owner, a person, a leasehold interest, a lease, and a lot, and concluded that the Developer fit within the definition of an owner. It is undisputed that at the time of the trial, the Developer had a renewed lease directly from the District for certain lots. As such, it was the record holder of a leasehold interest and thus the owner of those lots. The Developer failed to present any evidence during the trial that it is excluded from being an owner. Although it argues that there is a difference between a lease in a residential lot and the developmental lease it held in raw acreage, again the Developer's own president admitted there was no difference between the two. The covenants do not make such a distinction or limitation. Thus, after analyzing the definitions and the evidence presented at trial, we find that the chancery court

11

did not err in finding that the Developer is an "owner" within the meaning of the covenants.

**II.     Whether the substantial evidence supports the rest of the chancery court's rulings.**

¶24.    At the close of the Homeowners' case, the Developer moved to dismiss the Homeowners' case pursuant to Rule 41(b) because they had not shown a right to relief. The court, in a bench ruling, found that: (1) the Developer was not liable for assessments because it had received no written notice of them; (2) the Homeowners failed to show that a continuing lien exists against the Developer; (3) the Developer was entitled to voting rights; (4) the Homeowners failed to prove that the Developer owned the common areas; and (5) the Developer was not responsible for the upkeep of the common areas. The court incorporated its bench rulings into its final judgment. We find that there was substantial evidence to support the court's decision.

### A.     *Written Notice: Assessments, Continuing Lien, and Voting Rights*

¶25.    The court ruled that the Association must provide written notice to those whom it intends to assess, in this case the Developer. Because the court found that written notice was not given to the Developer, it also found that assessments were not due, a continuing lien did not exist, and there was no basis to suspend the Developer's voting rights.

¶26.    The Homeowners first argue that the chancery court erred because Article V, Section 5.01 of the covenants does not require a written notice. But it does. It reads in relevant part:

> The Board of Directors shall prepare, or cause to be prepared, an annual operating and capital expenditure budget for the Association, including the Common Area and the Lakes. The Board of Directors shall make reasonable efforts to determine and to calculate the amount of the annual Assessment

12

against each Lot for each fiscal year at least 30 days prior to the start of such fiscal year, and **written notice of the annual Assessments shall be sent to the Members**. The Association shall prepare and maintain a schedule of the annual assessments for the Lots and the schedule shall be available for inspection by any Member upon 10 days notice to the Association. The omission or failure by the Board of Directors to determine or calculate the amount of the annual Assessments applicable to the next fiscal year shall not constitute a waiver or modification of any provision of this Article V, and shall not constitute a release of any Member from the obligation to pay the annual Assessment against the Lot of the Member, or any installment of such Assessment, for the next or any subsequent fiscal year, but the annual Assessment for the immediately prior fiscal year shall continue to be the annual Assessment payable by the Members until a new annual Assessment is determined or calculated by the Board of Directors.

(Emphasis added). The Developer was a Class B member under Article III, Sections 3.02 and 3.03. Clearly the trial court properly held that pursuant to Article V, Section 5.01, the Association had a duty to provide the Developer written notice of the assessments it owed.

¶27. The Homeowners failed to prove during their case-in-chief that written notice was provided to the Developer. The only evidence introduced by the Homeowners pertaining to the notice given to the Developer was through Jeffrey's and Barbie Heckenberger's testimony. Jeffrey testified that the Association made a claim for assessments to be paid by the Developer at the homeowners' meeting in 2014. He stated that Barbie, as the treasurer, notified the property owners that they were past due on their assessments by reading the financial statements aloud during the meeting. On cross-examination, Jeffrey testified that there were no minutes from that meeting.

¶28. Barbie testified that she prepared a financial report for the membership meeting in October 2014, and that she read through the list of property owners that were delinquent on their assessments at the meeting—including the Developer. According to Barbie, Steve

13

Horn, the president of Livingston Development Corporation who represented himself as "the Developer," was present at that meeting. Barbie conceded on cross-examination that she did not provide anything in writing to the Association or Horn.

¶29. Throughout the cross-examination of the Heckenbergers, counsel for the Developer argued that corporations only speak through their minutes and that the Heckenbergers' testimony was improper. *See Dhealthcare Consultants Inc. v. Jefferson Cty. Hosp.*, 232 So. 3d 192, 194 (¶15) (Miss. Ct. App. 2017); *Wellness Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1290-91 (¶9) (Miss. 2015); *Thompson v. Jones Cty. Cmty. Hosp.*, 352 So. 2d 795, 796 (Miss. 1977). But in *His Way Inc. v. McMillin*, 909 So. 2d 738, 746 (¶16) (Miss. Ct. App. 2005), this Court noted:

> While the chancellor is not precluded from considering personal knowledge of the corporate actions, there is no precedence or statutory law that requires the chancellor to give the personal testimony more weight than the corporate minutes. The chancellor is also tasked with observing the demeanor of witnesses and determining the appropriate weight and credibility of their evidence.

According to *McMillin*, the court here properly admitted the testimony of the Heckenbergers, but it does not help the Homeowners' case because each witness conceded that written notice of the assessments was not given. Thus, we find that the testimony of the Heckenbergers was inadequate to show that written notice of the assessments was provided to the Developer.

¶30. Next, the Homeowners argue that the Developer impliedly consented to be charged assessments and dues common to all members despite the lack of notice. They cite for support *Perry v. Bridgetown Community Association Inc.*, 486 So. 2d 1230, 1234 (Miss. 1986), which held that "[a] landowner who wil[l]fully purchases property subject to control

14

of the association and derives benefits from membership in the association implies his consent to be charged assessments and dues common to all other members." The trial court agreed with the concept but held that the Developer's implied agreement here did not relieve the Association of its duty to give the Developer written notice of the assessments as required in the covenants. We find no fault with the trial court's finding that the covenants require written notice and that the outcome in this case was not controlled by *Perry*.

¶31. Finally, the Homeowners argue that the Developer was given written notice by the original complaint that was filed on November 24, 2014, which demanded compensation for the unpaid assessments. But the Homeowners never raised this argument in the trial court. The filing of a complaint constituting "written notice" is a separate legal issue that the chancery court did not have an opportunity to consider. Therefore, this argument is procedurally barred because it was raised for the first time on appeal. *See Fowler v. White*, 85 So. 3d 287, 293 (¶21) (Miss. 2012) ("This Court has long held that it will not consider matters raised for the first time on appeal.").

¶32. Accordingly, we find that written notice of the assessments was an essential element of the Homeowners' case-in-chief. Because the Homeowners failed to show that written notice was given, we find that substantial evidence supported the court's ruling that the Developer did not owe assessments. Therefore, the court correctly held that there was no continuing lien for unpaid assessments, and the Developer's voting rights could not be suspended.

   B. *Common Areas*

¶33. The Homeowners requested a declaratory judgment that the Developer was the owner of the "common areas" and was therefore responsible for the maintenance, upkeep, and repairs to those common areas. After the Homeowners rested their case-in-chief, the court granted the Developer's motion to dismiss that claim pursuant to Rule 41(b). The court stated that "[t]he owner of the common areas has a duty to maintain said common areas. As the plaintiffs have failed to prove that the Developer owns the common areas, the plaintiffs are not entitled to relief against the Developer for repairing Livingston Lane, the Drainage Easement, or the Lake." We agree.

¶34. Article II, Section 2.02 of the covenants explains ownership of common areas. It reads as follows:

> All of the real property described in Exhibit B is set aside as, and declared to constitute, **the Common Area** and, after such real property is conveyed or the leasehold interest under the Lease in and to such real property **is assigned to the Association by the Declarant** and/or the District, the Common Area shall be held and owned or such leasehold interest in the Common Area shall be owned for the common use, benefit and enjoyment of the Members. The designation of any portion of the Property as a Common Area shall not mean that the public at large acquires any right or easement of use, benefit and enjoyment in or to the Common Area.

(Emphasis added).

¶35. The Homeowners presented two witnesses in an effort to show that the Developer was the owner of the common areas. Todd Burwell testified as an expert in real estate, in the areas of covenants, by-laws, and the plats and the development of leases. At the time of the trial, Letitia Reeves was a Sixteenth Section land manager who maintained the School District's leases, collected the lease payments, and assured timely reappraisals. Their

16

testimony, however, did not prove what the Homeowners alleged in their complaint.

¶36.  Burwell could not testify with certainty about who owned the common areas. An excerpt of his testimony provides:

Q:     In your opinion, who owns the common area?

A:     Well, the owner of the common area would be the District. The State of Mississippi and the District holding that as Trustee for the State of Mississippi is the actual owner of the property unless it has assigned a leasehold interest of that out to somebody.

Q:     And who is the holder of the leasehold interest in the common area in your opinion?

A:     The leasehold interest has been conveyed out by lease assignment by the District to the developer. There is a question as to whether or not that is currently the case under the Third Renewal. I believe it could be read to include that, but in the legal description of the property, it refers to specific lots and doesn't specifically describe the common area. But it is a renewal of the previous leases, which did include the common area in the leased portion.

Q:     So who holds the leasehold interest in your opinion to the common area now?

A:     If it's covered by the Third Renewal, it would be the developer.

THE COURT:      I heard an "if," sir. What does that mean?

[Burwell]:    Well, Judge, I don't know if it's clear under the Third Renewal. As I mentioned, it does not specifically describe the common areas, but it does say it is a renewal of the past leases, which does. And that's all I can say.

THE COURT:      Thank you.

BY [COUNSEL FOR THE HOMEOWNERS]:

Q:     Who is responsible for the maintenance and upkeep of the common area?

17

A: It would be the owner of the common area or the leasehold interest holder of the common area.

Q: And would that be the developer?

A: If the developer is currently the lessor of that, which as I mentioned, I believe that is the case under that Third Renewal, then the developer would be responsible for that.

Burwell's opinion that the common areas had been leased to the Developer was conditioned upon the terms of the Third Renewal lease. The Third Renewal lease, however, covered only specifically numbered lots and makes no mention of the common areas.

¶37. Reeves could not testify with certainty that the Developer owned (or was the current lessee) of the common areas either. She testified that there was no lease on the common areas at all. In an excerpt of her direct testimony, she stated as follows:

Q: In your lay person's opinion, or in your capacity as an employee of the Madison County School District, do you have any knowledge as to whether or not the Livingston Subdivision common areas have been conveyed to the Livingston Property Owners Association, Inc.?

A: No.

THE COURT: No, you don't have an opinion or, no, they have not[?]

[Reeves]: I don't know that they did something between themselves. I know I do not have a lease.

[COUNSEL FOR THE HOMEOWNERS]:

Q: When you say you do not have a lease, what do you mean?

A: From the Livingston Homeowners Association for the common areas.

Q: Okay. Do you have any knowledge in your capacity as an employee of the Madison County School District as to who the current lessee of the

18

common areas of Livingston Subdivision is?

A: The current lessee, it would need to be under lease, and it was not included in the Development Lease. And the Homeowners Lease was never executed. So there's no lease on it.

¶38. Furthermore, the covenants state that the Developer

delegated and assigned the powers and duties created by the Covenants to the Association for the administration and maintenance of the common areas and lakes, the administration and enforcement of the provisions of the Covenants and the determination, and the collection and disbursement of the maintenance and special assessments and other charges." Thus, even if the Developer did own the common areas, it delegated its rights and duties to the Association, relieving itself of the any obligations for their maintenance.

¶39. As before mentioned, "[i]f the judge would find for the defendant on the evidence presented, the case should be dismissed." *Lewis*, 269 So. 3d at 235 (¶14) (internal quotation marks omitted). Also, the defendant's motion to dismiss "should be granted if the plaintiff has failed to prove one or more essential elements of his claim or if the quality of the proof offered is insufficient to sustain the plaintiff's burden of proof." *Id*. Because the Homeowners failed to prove that the Developer owned the common areas, they were not entitled to relief for the maintenance, upkeep, and repairs of the common areas. Thus, we find that there is substantial evidence to support the chancery court's ruling on this issue.

### III. Whether either party is entitled to attorney fees.

¶40. "The trial court's decision regarding attorney's fees is subject to an abuse of discretion standard of review." *Teasley v. Buford*, 876 So. 2d 1070, 1081 (¶27) (Miss. Ct. App. 2004). "Absent some statutory authority or contractual provision, attorneys' fees cannot be awarded unless punitive damages are also proper." *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474,

19

486 (¶40) (Miss. 2002).

¶41.    The Homeowners argue that they are contractually entitled to attorney fees under the terms of the covenants.  They rely on Article XIV, Section 14.01, which provides for the payment of attorney fees when a legal action is brought.  However, that same section begins by saying:

> If any provision of this Declaration is breached or violated or threatened to be breached or violated by any Owner or other Person, then each of the other Owners, the District, the Declarant and/or the Association, jointly or severally, shall have the right, but not the obligation, to proceed at law or in equity to compel compliance . . . .

In other sections of the covenants, the parties anticipate a default and/or a breach in order to be entitled to attorney fees.  For example, in Article VI, Section 6.03, attorney fees may be awarded upon a default by any owner in the payment of its assessments.  It is reasonable, then, to read Section 14.01 as conditioning the payment of attorney fees upon proof of a breach of the covenants.  Here, the Developer did not breach any portion of the covenants, and the Homeowners were not entitled to any attorney fees.

¶42.    The Developer argues that it is entitled to attorney fees because (1) the case was properly dismissed; (2) the Homeowners' complaints were frivolous or in bad faith; and (3) the Homeowners sued without reasonable cause or for an improper purpose.  The Developer notes that section 79-11-193(4) provides that a defendant can require complainants to pay reasonable expenses if the proceeding was commenced frivolously or in bad faith.  In addition, the Developer argues that section 79-11-193(4), which is a part of the Mississippi Business Corporation Act Article 7(D), requires a plaintiff to pay the defendant's reasonable

20

expenses when the proceeding was maintained without reasonable cause or for an improper purpose.

¶43. The chancery court did not find that the Homeowners' lawsuit was either frivolous, brought in bad faith, without reasonable cause, or for an improper purpose. Therefore, the Developer was not entitled to attorney fees under section 79-11-193 or the Mississippi Business Corporation Act. Moreover, the court found that the Homeowners succeeded in obtaining a judgment in their favor as to one issue—that the Developer was an owner of its residential lots. Therefore, the court did not err in holding that each party would bear its respective fees and expenses.

## CONCLUSION

¶44. We find that the chancery court's rulings on the above issues were based on substantial evidence. Accordingly, we affirm its judgment.

¶45. **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND McCARTY, JJ., CONCUR. BARNES, C.J., AND C. WILSON, J., NOT PARTICIPATING.**

21